JONES, Judge.
Petitioner sues for damages for personal injuries as a result of an automobile accident which happened on Florida Street in the City of Baton Rouge, Louisiana, on the 27th day of October, 1957. She seeks recovery from the defendant, Marcile D. Pearce, the driver of the car that struck the car in which plaintiff was riding, and the State Farm Mutual Automobile Insurance Company, Mrs. Pearce’s liability insurer. This suit was consolidated with the suit of Miss Willie Strain vs. Marcile D. Pearce, et al., for the purpose of trial, with separate judgments to be rendered in each case.
The District Court rendered judgment in favor of each of the plaintiffs and both of them appealed seeking an increase in the amount of the awards. The defendants likewise appealed and at the time of argument of the case in this court counsel for defendants admitted liability and stated the defendants were willing to pay the amount of judgment awarded in the District Court in favor of each plaintiff. This was not acceptable to counsel for the plaintiff. The amount of award to this plaintiff was $1,000 for her personal injuries and $205 for medical expenses. Thus, the only question in dispute is as to quantum.
The accident happened while the respective automobiles were traveling east on Florida Street. The Volkswagon automobile in which plaintiff was a passenger had stopped for a red light and the defendant, Mrs. Pearce, who was traveling in the same direction and immediately behind the Volks- *35 wagon, inadvertently permitted her foot to slip from the brake and her car, which was in gear, ran into the rear of the Volks-wagon. The evidence shows that the rear bumper of the Volkswagon was bent in some three inches and a severe jolt was visited upon the occupants of the Volks-wagon. The petitioner, Mrs. Marchiafava, testified that she was thrown forward and shortly thereafter was in such pain in her neck and her hack that she could not get out of the Volkswagon. Shortly thereafter an ambulance was called and she was taken to the Baton Rouge General Hospital. This testimony is corroborated by several of petitioner’s relatives. After arriving at the hospital, the petitioner was examined by D.r. Bannerman, an orthopedic surgeon. He diagnosed her condition as a strain of the muscles of the neck as well as her lower back and suggested that she go to bed at the hospital and that if she had not improved within two or three days he would place her in traction. Due to the fact she feared traction, she would not remain in the hospital hut went to her home.
She testified -she was suffering such intense pain that on the next day she went to see Dr. M. A. Truluck, a doctor of osteopathy, and after she had given him the history of her case, he found that she was suffering with pains in her neck and-lower back area; that she had contractions or muscle spasms of both the cervical and lumbar areas and that she was unable to turn her head. He prescribed rest and heat and the petitioner testified she remained in bed for a period of practically two months with the exception of the time she paid visits to the doctor. He saw her, according to his testimony, some thirty-nine times during a period of seventeen months after the accident and the last time he saw her was March 18, 1959 and even at that time his testimony reflects that she was still having spasms in the neck and back, though not in such a marked degree as when he first began treating her. He did testify, however, that during the first and last visit there had been times when she would be- worse and times when she would be better. For instance, his testimony shows she was worse in August of 1958 than she •was in February of the same year. He was of the opinion she would continue to suffer for an indefinite period.
- Dr. J. Willard Dowell, an expert in the field of orthopedics, examined the petitioner approximately one year after the accident and resulting, injury. His testimony reflects that he obtained the history of her injury,'the mechanism of it and her complaints. He also performed a physical examination and had X-rays taken from all of which he reached his conclusion. His diagnosis was that Mrs. Marchiafava had a sprain of the neck and of the lumbosacral joint. He stated that she was complaining of pain mainly in her neck and upper back and was also complaining of headaches. He was asked if there was any way to determine the length of time that this plaintiff would suffer from pain from which she was complaining at the time he saw her and 'he stated that there was no way of determining any definite length of time. He further -stated that he didn’t think she would have any permanent disability but there was no way of knowing how long the injury would last. His testimony reflects that at ‘the time of the examination there was tenderness of the neck muscles and the suprascapular muscles (that is the muscles above the shoulder blades), and as to her lower back -he had no notes as .to. whether she had any. tenderness in this region. He stated that the -X-rays of the cervical spine, the lumbosacral spine and sacrum were negative. In his report this doctor stated he was unable to detect any definite muscle .spasm, but he meant by that persistent muscle spasm and stated that when Mrs. Marchiafava was lying in a prone position on her stomach, there was some tenderness in her back muscles but that when she would shift her position the muscle spasm would disappear. He further found minimal limitation of the extension o.f the neck. It is true that this doctor did state as a result of his examination that it was un *36 usual for this petitioner to still be exhibiting the symptoms of which she compained.
There can be no doubt but that Mrs. Marchiafava suffered considerable pain for a period of at least eight months after this accident in both the cervical and lumbar regions. As heretofore stated, she remained in bed for almost two months after the accident and for six months thereafter she could do no work at all, not even her household duties. Apparently she was suffering to a considerable extent when she was examined by Dr. Dowell approximately a year after the accident because when she was in a prone position on her abdomen there was muscle spasm in her back and, too, there was tenderness in the cervical area.
The District Judge in his opinion stated that he did not believe the injuries suffered by Mrs. Marchiafava were severe though he felt that there was some slight injury for which he granted judgment for $1,000. While it is true the jolt which Mrs. Marchiafava received was not too severe, it apparently resulted in injuries of a rather severe nature. This is borne out by the testimony of not only her and her relatives but the testimony of Doctors Truluck and Dowell. For these reasons, we believe that the award herein was too small and not Jti line with the awards allowed by the courts for injuries of a similar nature.
In the case of Attaya v. Zimmerle, La.App., 83 So.2d 676, this court found the plaintiff was entitled to damages in the amount of $2,500 for injuries to the plaintiff’s neck. The plaintiff in the Attaya case was injured on March 5, 1954, as a result of a collision between two automobiles and she was treated by her family physician from March 6 to April 22, 1954. On April 24, 1954, she was treated by Dr. Bannerman, an orthopedic surgeon, and stayed under his treatment for a period of two and one-half months or until July 6, 1954. This doctor stated the plaintiff had a whiplash injury and complained of a tenderness, particularly on the right side of her neck in the musculature, but there was no tenderness over the neck bone. On the date of her last visit to him, her motion was almost normal. This doctor examined the petitioner again on June 28, 1955 and she complained to him that she was still suffering and that when she remained in the same position for any length of time her neck began to hurt her. This doctor said that there was slight restriction of the motion of her back and classified her case as mild to moderate and no permanent injury and no evidence of nerve pressure. He further stated that this petitioner’s injury was more prolonged than one would ordinarily expect and that is about the same thing Dr. Dowell said in the present case. Dr. Forman, a neurological surgeon, examined the petitioner in the Attaya case on two occasions, March 21, 1955 and June 21, 1955. On the first examination, he found slight limitation of movement of the neck in certain directions and he found tenderness to pressure over the left side of the back of her neck, and flexion, bending the neck forward, was most limited at' that time. On the second examination, he found no damage to nerves or nerve roots. He stated that her headaches were less frequent and less severe. He further testified that the plaintiff in that case had received a moderate severe whiplash injury.
Since this court in the Attaya case awarded $2,500 damages to the plaintiff therein, it seems in line that the present plaintiff is entitled to a like award because her injuries were most certainly as severe as those of the plaintiff in this cited case. Accordingly, the judgment of the District Court will be amended by increasing the award to Mrs. Catherine Marchiafava to $2,500 and in all other .respects the judgment is affirmed, defendants to pay the costs.
Amended and affirmed.
HERGET, J., recused.